May it please the court, my name is Rick Barnett and I represent the named appellants in this case. The two issues before this court are whether the district court applied the correct standard in issuing a default judgment in this case and assuming that it did, did the district court abuse its discretion in granting that default? We start with some basic principles. Number one, that forfeitures are disfavored, especially in a case here where you have a series of claimants that were never charged in the criminal indictment involving the Mongols and there isn't a scintilla of evidence, not one sentence, not one document, not one declaration indicating that either they or their vehicles, their motorcycles were ever involved in criminal conduct or conduct allowing forfeiture. We know that judgment by default is a drastic step used only in, appropriate only in extreme circumstances and a case wherever possible should be decided on the merits. Any doubt should be resolved in favor of the setting aside the default and that the standard should be liberally applied. Now the first issue like we said is did the district court apply the wrong standard? And I think it's crystal clear it did. We have a series of cases from this court, started with TCI, then franchise holding and then the Messley case. And those cases very clearly say that in a default situation you look at three factors. Was there culpable conduct? Was the government in this case prejudiced and was there a meritorious defense? In this case the court didn't do that. It got sidetracked into this excusable neglect argument. It never even mentioned culpable conduct in its ruling. It never even mentioned exceptional circumstances. So we think very clearly the court applied the wrong standard and under the Hinkson case which followed a Supreme Court case also cited in Hinkson, that automatically requires reversal because it's automatically an abuse of discretion to apply the wrong standard. I think Kuhn was at least maybe one of the cases that the Supreme Court said that a legal error is an abuse of discretion. Yes, I have the name over there. It doesn't matter. So let's look at the three factors. Once we get back past that point, let's look at the three factors in this case. Let me just address the preliminary question. As to the defendants or the claimants who never filed a claim, did they have standing to even be challenging the district court's order now? Well they did because first of all the government never argued they didn't have standing and once they were served with the default notice which was sent to them, they filed their response and set forth the should be in the case. There really was no other way for them to get into the case at that point. Now looking at the three standards, culpable conduct, meritorious defense and prejudice to the other party, we know that in order to establish that there was culpable conduct, the government would have to show that there was devious, deliberate, willful or bad faith failure to respond. Now we haven't much of individual claimants. We've addressed that in the briefs, but were they maybe negligent? Yes, but negligence is a lot different from willful, deliberate or devious behavior and we think that we prevail on that point. As to the meritorious defense, what is more meritorious than there is zero evidence that these motorcycles were ever used in an illegal manner? We have the declaration from myself that reviewed all 3,761 pages of discovery and out of eight claimants, only one was even mentioned and the mention of him was we went and searched his house. There was zero evidence and that in itself is the meritorious defense. Finally as to prejudice, there is no prejudice here. The government, when we think of prejudice, what do we think of? We think of missing witnesses or missing evidence. Well this entire case would have been based on their witnesses. It was their agents that went undercover and were involved and essentially became Mongols members so to speak. They're the witnesses that would have testified, well on this date this motorcycle was used in this manner or on this date this claimant did this. There's none of that. They're not going to lose any of that. They have all that. It's their witnesses. They have the reports and the government has never filed a declaration or anything else suggesting that they've lost any evidence or they've lost any witnesses. So I think that on that basis we are entitled to a reversal in this court and I think I'd reserve, unless the court has any questions, I'd reserve the remainder of my time. I don't believe we do. You may do that. Hear from Mr. Welk. Good morning. May it please the court. I'm Assistant U.S. Attorney Stephen R. Welk for the government. Whether a district court properly denies relief from default or enters a default judgment over the objection of a defaulted party is reviewed for an abuse of discretion. It comes down to this test that was established in a series of cases from this court, TCI Group, Franchise Holding, Mesley, Brandt. And what Mesley says is that the primary question, one of the things that the claimants focus on here, and it's clear why they do it, is that they focus on this magic words theory, that the court didn't say things exactly the way they would have liked to. It's more than the court didn't say things. It seems to have applied a completely different test from a different rule. So I'm not sure why that isn't a problem. They discussed factors that deal with relief from a final judgment and not with respect to relief from the entry of default. So it was kind of talking about the wrong topic. While the court enunciated a different test, the question in Mesley, according to the Mesley court, said the primary question is whether the district court identified the correct legal standards to apply. Well, it didn't. But I would suggest they did, because what the district court did in its order specifically discussed the three elements that are discussed in all of these cases. Some of the factors sort of vaguely overlap, but it was just kind of a surprising decision from a very highly respected district court judge that the wrong standard was used. I don't know how you can succeed in your argument that he applied the correct legal standard or even identified the correct legal standard. I'd like to have an opportunity to explain, because I think I can. And the reason is because the court made specific findings on those three elements that are identified in the appropriate test. Number one, the court had a specific discussion about prejudice, whether the court found that because of the time delay and because of the actions of these claimants that both the government and the court would be prejudiced and would encounter substantial prejudice. Didn't you file a brief, at least in the Gonzales case, where you said, recognizing that the court has wide discretion to grant relief from default here and acknowledging that allowing claimant back into the case will not cause substantial prejudice to the government. Isn't that contrary to what Judge Carter found? No. Well, I don't think it's contrary to what he found. I think that one of the important things to recognize here that everyone seems to agree on, that this is a disjunctive test. This three element test is a disjunctive test. Brandt made it clear that all the court has to find is in favor of the party seeking default on one of the three elements in order for the judgment to be properly entered and for relief to be denied. So you weren't prejudiced. You wouldn't be. With respect to Gonzales, there are some situations here in this hodgepodge of claimants that were presented where the government wasn't prejudiced at the time that those arguments were made. For example, with respect to Mr. Guerrero, when Mr. Guerrero filed his application for relief from default after his claim and answer had been stricken, the government said there would not be prejudice here because the trial was still months away and there was still time to get ready for trial for that to happen. But that's not what happened here. What happened with the rest of these people is none of them came forward until after the trial date had passed, months had gone by, and the government had gotten back to bring the motion for default judgment. That's when they came forward. Every one of these claimants realized, and they admit this in their declarations that are part of the record, every single one of them realized at some point much earlier on that they should have done something more than they did, that they should have done something in this case, either because they received direct notice, the written notice that was sent to them by the government, or because they gained actual knowledge of what was going on in the case and that their property was in danger. But we're talking about prejudice to the government. What's the prejudice to the government at this date? Has the government sold off the motorcycles? These motorcycles have not been sold off. The motorcycles and other property are still there. They're still there. The prejudice to the government is that over the course of this case, from 2009 when it began until 2013 when it ended, a look at the record, the docket report on this case will show that there were, even though the case was stayed, it wasn't formally going forward, there were 98 claimants in this case. Over 100, there were hundreds of assets in this case, and it's shown by the exhibit. Why is that relevant? It's relevant because over the course of this case, the government was focusing on, was negotiating with all of these claimants, these people that did come forward and came forward to present their claims. The government was able to negotiate with those people, organize its evidence as to those people, make decisions as to those cases where a lot of that property was forfeited, some of it was returned. There are all sorts of categories of settlements that were entered into, consent judgments that were entered into, and as the government did that, as we did that, we were confident, as was the court, the district court, that this case was winnowing down, that we were narrowing the issues and getting closer to what we were going to focus on. That's really not the standard, is it? I mean, when you're looking at entry of default, it is often the case that the party against whom default is entered has been negligent, but we have cases that say that that alone is not a good reason to not set aside the default. I agree, and that takes us to the second element, and that's the culpability element. One of the findings that can be made that justifies the culpability element is that the party who's seeking relief from default acted in bad faith. Judge Carter made a specific finding here that these claimants acted in, that they did not act in good faith, and part of the reason for that is because they waited a long time after they knew that they should have done something and didn't do anything. But delay is also not particularly, it's not one of the factors to consider under the default three-part test. No, but the reason for the delay is what's important, and that's where we get to this lack of good faith. The four factors, the four types or the four categories of actions that can be determined to be culpable include deviousness, deliberateness, willfulness, and bad faith. Deliberateness, I think, is what's clear here. All of these people realized at some point that they were supposed to do something and they didn't do anything. That's called negligence. But if that's negligence, if what was done here is merely negligence, then it's hard to imagine in the context of a civil forfeiture case what could possibly consider deliberateness or bad faith. Articulate for me why knowing they should be doing something and not doing something would be for some deliberate bad faith reason. I think we need to look at Messle is the best example of this. Messle, in that case, the court found, and I think it was undisputed, I think, based on the facts. The claimant in that case tried to do everything he could to protect his rights. He filed a claim in the administrative forfeiture proceeding. He had some confusing documents that he looked at. He asked for the judicial case. When that notice came to him, he misunderstood it. He thought that he had done what he needed to do. So it wasn't that he knew he had to do something and decided not to do it. That's what these people... The evidence in this record says some of them were in jail on other crimes and so couldn't do what they had to do. Some of them actually showed up in the courtroom for the status conference but didn't know they were supposed to check in with the clerk. I mean, some of these things sound really trivial in terms of... Except that, except that, I think one of the things that's important here to remember is this case involves more than just the policy about default judgments. The reason the court has the wide discretion that it has is because it is able to look at these situations and make determinations on that. Some of the other policies that are implicated here are discussed in the government's answering brief that relates specifically to civil forfeiture cases. The reason, the number one thing I'm going to talk about first is this idea that you cannot just sit back and rely on the fact that the government couldn't find you when they tried to send you written notice. If you have actual notice of an ongoing forfeiture case involving your property, that remedies the failure to receive notice. Why wasn't the forfeiture a part of the criminal proceeding? Because it's set forth on page 176 of the indictment and had 32.2 been followed, you could have gone through that whole procedure, had the ancillary proceedings, which then would have required notice to all of these people and you could have had the forfeiture and if you failed there, then you could have gone with the civil forfeiture. We couldn't have, we did that, we can only do criminal forfeiture with respect to indicted defendants. And these are not indicted defendants. There were dozens. That goes to whether the government could actually prove that their property was used in conjunction with the criminal activity. They weren't even indicted defendants. That's true. So how could you meet your burden of proof if you didn't even indict them? Because there are, first of all it's a lower burden of proof, secondly there's no requirement that a claimant in a civil forfeiture case be arrested or indicted for anything. But you didn't indict them, so you weren't put to your proof of whether or not any of the stuff that was forfeited was used in connection with criminal conduct. That's true, we were not put to our proof because the claimants did not come forward and file the claim. Because they didn't show up for a status conference. No, well with the exception of, that's one person who was, there are two people here who were. The only one I think clearly probably has nothing going for him at this point is Widmeyer because he signed the waiver. Well there's Harry Reynolds who admitted he received a thousand pages of pleadings and he received the orders that said you have to come to every appearance and he never showed up for anything. All the things that were mailed to him were mailed to his home address that is listed on his claimant answer. He did nothing to respond, literally nothing. Mr. Guerrero showed up for two hearings and sat there and didn't check in. Counsel, your time has expired and you may have a sentence or so to wrap up if you'd like. I would just point out to the court that I think the key here is that the court did identify the three elements and discuss them specifically in its order. To the extent that the order could be made more clear, the government would ask that as an interim measure, as an alternative measure, if it's not going to be affirmed, that the matter be remanded to the district court for further consideration or for a clearer consideration and reapplication of this. Thank you, Counsel. Mr. Burnett, you have a little time remaining. I just wanted to clear up one factual issue and that is it is not true that Mr. Reynolds was told in orders to be at every appearance. Of the three status conferences, it was only the middle appearance, which I think was March 26th, that the order directed all parties to be there. With that, unless the court has any other questions, I am... I don't believe that we do. Thank you very much, Counsel. We appreciate the arguments from both parties and the cases submitted.
judges: Molloy, Graber, Wardlaw